UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAHNAAZ A.R. KHAN f/k/a SHAHNAAZ A. AZEEM,<br>Plaintiff,<br>v.<br>ONE WEST BANK F.S.B. and OCWEN LOAN SERVICING, LLC,<br>Defendants. | )<br>)<br>) CIVIL ACTION<br>)<br>) File No. 1:16-cv-08074<br>)<br>) JURY TRIAL DEMANDED<br>)<br>) |

## COMPLAINT

Plaintiff SHAHNAAZ A.R. KHAN f/k/a SHAHNAAZ A. AZEEM, by the undersigned attorneys, files this complaint against ONE WEST BANK F.S.B. and OCWEN LOAN SERVICING, LLC as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages for breach of contract, and from Defendants' violations of the Fair Debt Collection Practices Act ("FDCPA"), the Illinois Consumer Fraud Act ("ICFA"), and the Real Estate Settlement Procedures Act ("RESPA").

2. All of the claims stated herein stem from Defendants' wrongful servicing and illegal debt collection activities related to Ms. Azeem's home mortgage loan.

### JURISDICTION AND VENUE

3. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1337, 15 U.S.C. § 1692k (FDCPA), and 12 U.S.C. § 2614 (RESPA), as the action arises under the laws of the United States. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

1

## PARTIES

4. Plaintiff SHAHNAAZ A.R. KHAN f/k/a SHAHNAAZ A. AZEEM ("Azeem")[1] is a natural person who resides at 673 N. Charlotte St., Lombard, IL 60148 ("subject property").

5. Defendant ONE WEST BANK F.S.B. ("OneWest") is a Delaware corporation with its principal place of business in California. OneWest is a creditor of mortgage loans and in the business of debt collection across the country.

6. Defendant OCWEN LOAN SERVICING, LLC ("Ocwen") is a Florida company with its principal place of business in Florida. Ocwen is in the business of servicing mortgage loans and debt collection across the country.

7. OneWest and Ocwen regularly conduct business in Illinois.

## FACTS SUPPORTING THE CAUSES OF ACTION

8. Azeem is an American citizen who speaks English as a second language.

9. On January 6, 2006, Azeem executed a mortgage loan in favor of Guaranty Bank for the purchase of the subject property as her family home.

10. Thereafter, the mortgage loan was transferred to OneWest.

11. On October 24, 2008, OneWest filed a foreclosure complaint against Azeem and the subject property based upon a payment default on the subject mortgage loan in case known as *OneWest v. Azeem, et al.*, 2008 CH 4259 (DuPage County).[2]

12. During the foreclosure case, Ocwen became the loan servicer on behalf of OneWest.

---

[1] Plaintiff recently changed her name from "Shahnaaz Azeem" to "Shahnaaz Khan." She is referred herein as "Azeem" to correspond with the name on the loan documents during the relevant time period.

[2] The foreclosure case was originally filed by IndyMac. Prior to the events described in this complaint, OneWest substituted as party plaintiff in place of IndyMac

2

13. On March 18, 2015, while the case was pending, Azeem received a proposed loan modification agreement from Ocwen, dated March 11, 2015. *See* Exhibit A attached hereto is a true copy of the loan modification agreement and cover letter.

14. Also on March 18, 2015, Azeem notified Ocwen of her intent to accept the loan modification over the phone.

15. The loan modification required monthly payments of $2,453.89 for principal, interest, and escrow (taxes and insurance). *Id*.

16. To complete the loan modification, Azeem was required to make (a) an initial payment of $2,453.89 on or before April 1, 2015, and (b) one additional trial payment in the amount of $2,453.89 on or before May 1, 2015. *See* Exhibit A at "STEP 1."

17. If Azeem completed the above steps, the modification would automatically convert into a permanent modification on June 1, 2015. *See* Exhibit A.

18. Azeem followed all of the required steps to accept the loan modification offer and complete the modification agreement by the due dates. *Id*.

19. On March 30, 2015, Azeem signed and returned the loan modification to Ocwen. *Id*.

20. On March 31, 2015, Azeem made her initial trial payment to Ocwen in the amount of $2,453.89.

21. On May 1, 2015, Azeem made the final trial payment to Ocwen in the amount of $2,453.89.

22. On June 1, 2015, the trial modification converted into a permanent modification. Pursuant to the loan modification, Azeem's escrow account was fully funded and contractually current. *Id*.

23. Azeem set up an automatic withdrawal arrangement with Ocwen, whereby Ocwen would automatically withdraw funds from Azeem's bank account for each monthly payment.

24. Ocwen deducted $2,453.89 from Azeem's bank account on May 29, 2015 (June payment), July 1, 2015 (July payment), and August 3, 2015 (August payment).

25. On August 6, 2015 and August 29, 2015, Azeem received notices from Ocwen through her online account that confirmed the permanent loan modification.

26. However, in September 2015, Ocwen failed to withdraw Azeem's monthly modification payment from her bank account.

27. On or about September 4, 2015, Azeem contacted Ocwen for clarification. An Ocwen representative instructed Azeem to send in her loan modification payment to Ocwen by mail.

28. On September 4, 2015, Azeem sent her September 2015 loan modification payment to Ocwen in the form of a cashier's check by certified mail.

29. On September 22, 2015, Ocwen rejected and returned Azeem's September 2015 payment.

30. On September 23, 2015, Ocwen advised Azeem over the phone to continue making her modification payments by mail, and to send both the September and October 2015 payments together in the mail.

31. On September 23, 2015, Azeem sent two certified checks, each in the amount of $2,453.89, to Ocwen by certified mail for her September and October 2015 payments.

32. On or about September 24, 2015, Azeem reviewed her online account and learned that Ocwen was no longer honoring the loan modification. Ocwen claimed that Azeem owed monthly payments of $4,502.96 and that Azeem was in substantial default as if no loan modification existed.

33. What's more, Ocwen, through OneWest, proceeded with the foreclosure action as if the loan was not modified or brought current.

34. On October 15, 2015, Ocwen scheduled a judicial sale of the subject property.

35. In response to the threat of her home being sold, Azeem hired and paid for attorneys to file a motion in the foreclosure case to enforce the loan modification and to stay the judicial sale.

36. On November 5, 2015, Ocwen agreed that the loan was previously modified, signed the loan modification, and returned the fully executed modification to Azeem. *See* Exhibit A.

37. On November 9, 2015, the foreclosure case was finally dismissed.

38. From April 1, 2015 through today, Azeem has made every required payment on the loan modification.

39. However, after the foreclosure case was dismissed, Ocwen proceeded to mishandle the loan modification and the escrow account, and continued to treat the loan as it were in default.

    a. **Assessment of Wrongful Fees**

40. Following the effective date of the loan modification (June 1, 2015), Ocwen continued to assess fees to the subject loan account associated with a phantom "default," the wrongful prosecution of the foreclosure case, and the unlawful scheduling of a judicial sale.

41. Ocwen assessed at least the following fees to Azeem's loan account after June 1, 2015:

    06/04/15 – $13.25 (property inspection fee)
    08/13/15 – $13.25 (property inspection fee)
    09/14/15 – $13.25 (property inspection fee)
    09/23/15 – $250.00 (charge-reset sale)
    09/23/15 – $150.00 (selling officer/sheriff charge)
    10/13/15 – $13.25 (property inspection fee)
    12/30/15 – $1,583.00 (lender-placed insurance)

42. All of the charges were "default" related fees assessed after the loan had been brought contractually current.

    b.  **Alleged Escrow Shortage**

43. On February 2, 2016, Ocwen sent Azeem an "Annual Escrow Account Disclosure Statement" setting forth the escrow account history and projections for the upcoming year. *See* Exhibit B attached hereto is a true copy of Ocwen's Escrow Account Disclosure Statement.

44. In February 2016 – notwithstanding the fact that Azeem made all required loan modification payments – Ocwen claimed that Azeem owed a substantial escrow "shortage" in the amount of "$8,317.18." Ocwen attempted to spread the $8,317.18 "shortage" over 60 months, increasing Azeem's monthly payments from $2,453.67 to $2,703.40. *Id*.

45. There was no actual basis provided for the escrow shortage. *Id*.

46. In reality, from April 1, 2015 through February 1, 2016, Azeem made escrow payments totaling approximately $12,000.00. Ocwen accepted all of the payments.

47. Under duress and with the fear that Ocwen would take her family home, Azeem proceeded to make every subsequent payment at the higher amount.

    c.  **RESPA Notice of Error and Request for Information**

48. On March 2, 2016, Azeem sent Ocwen a RESPA Notice of Error ("NOE") and Request for Information ("RFI") to acquire information and to dispute Ocwen's handling of the escrow account and the assessment of wrongful fees. Ocwen received Azeem's NOE and RFI on March 10, 2016. *See* Exhibit C attached hereto is a true copy of Azeem's NOE and RFI.

49. Azeem specifically disputed the $8,317.18 escrow shortage, the assessment of wrongful fees, and requested certain documents related to the fees and account history. Azeem attached all relevant documents to her NOE and RFI. *Id*.

50. On March 30, 2016, Ocwen responded to Azeem's NOE and RFI. *See* Exhibit D attached hereto is a true copy of Ocwen's response to Azeem's NOE and RFI.

51. Ocwen attempted to justify the escrow shortage by providing a series of incomprehensible calculations. Additionally, the calculations relied on the false premise that Azeem made escrow payments totaling only $6,005.55 since April 1, 2015. *Id*.

52. In reality, Azeem had made escrow payments totaling approximately $12,000.00.

53. Ocwen also admitted that it has charged "default" related fees in the amount of $967.50 well after the loan modification was implemented. *Id*.

54. Ocwen claimed that the fees were still outstanding. *Id*.

55. Ocwen's response letter did not include any other documents or information, including those requested by Azeem. *Id*.

## CAUSES OF ACTION

### a. Agency

56. Defendants OneWest and Ocwen have a principal/agent relationship. Therefore, OneWest, as the principal, is liable for the acts and claims against Ocwen as its agent.

### a. Damages

57. Azeem has suffered damages from OneWest and Ocwen's conduct, including:

  i. Emotional distress, stress, anxiety, and pain and suffering;
  ii. Attorney's fees for having to file a motion to enforce the loan modification settlement agreement in the foreclosure case and stay the judicial sale;
  iii. Loss of time and resources to dispute the wrongful servicing, make oral and written disputes, pay postage, and enforce the terms of the loan modification; and
  iv. Interest, default charges, escrow charges, and fees that have been wrongfully added to Azeem's loan balance.

58. OneWest and Ocwen's actions were the proximate cause of damages to Azeem that include those set forth above, the misapplication of payments, Azeem living in a perpetual state of "default," and having to pay more for escrow than is actually owed.

**COUNT I – BREACH OF CONTRACT**
**(AGAINST ONEWEST AND OCWEN)**

59. Azeem repeats and realleges paragraphs 1 through 58 as though fully set forth herein.

60. Azeem has a valid and enforceable loan modification contract with Ocwen as the servicer of the subject loan and OneWest as the creditor of the loan. *See* Exhibit A.

61. Azeem fully performed her duties under the contract by tendering all monthly payments and by complying with all other terms of the loan modification contract.

62. Ocwen and OneWest breached the loan modification contract by:

   i. misapplying Azeem's principal, interest, and escrow payments;
   ii. rejecting Azeem's payments;
   iii. scheduling the subject property for a foreclosure sale in October 2015 when Azeem was contractually current with her monthly payments;
   iv. treating the loan in "default" when Azeem was contractually current;
   v. failing to honor the existence of the loan modification;
   vi. assessing and collecting unauthorized fees and costs, including "default" and foreclosure related fees after the effective date of the loan modification;
   vii. charging Azeem's escrow account above the limits allowed by the mortgage contract or the 1/6th cushion under RESPA;
   viii. imposing an "escrow shortage" when no shortage existed;
   ix. failing to provide Azeem accurate account information or accurately respond to Azeem's correspondence and other disputes; and
   x. failing to conduct its affairs in good faith.

63. Azeem suffered damages as set forth in paragraphs 57 and 58 that were proximately caused by the breach of contract.

WHEREFORE, Plaintiff SHAHNAAZ A. AZEEM requests that this Honorable Court:

   a. find that One West and Ocwen materially breached the mortgage contract;
   b. award Azeem her actual damages to be proven at trial; and
   c. award Azeem any other relief this Honorable Court deems equitable and just.

**COUNT II – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**(AGAINST ONEWEST AND OCWEN)**

64. Azeem restates and realleges paragraphs 1 through 58 herein.

65. Azeem is a consumer under 15 U.S.C. § 1692a(3), as the subject loan was extended on Azeem's primary residence and was strictly for personal, family, and household purposes.

66. The subject loan and the unauthorized fees qualify as "debts" under § 1692a(5).

67. OneWest and Ocwen each qualify as a "debt collector" under § 1692a(6) because (a) they regularly collect debts and use the mail or telephones to collect delinquent consumer accounts, (b) the principal purpose of their business is to collect debts, (c) they regularly collect debts owed to another party, and (d) they acquired the subject loan after it was in default.

   a. **Violation of §§ 1692e, e(2), e(5), & e(10) and §§ 1692f & f(1)**

68. In their attempts to collect a debt from Azeem, OneWest and Ocwen employed false, deceptive, misleading, unfair, and unconscionable conduct by:

   i. threatening to sell the subject property at a judicial sale in October 2015 – after the loan modification became effective – at a time when Ocwen was not authorized to sell the subject property by contract or law;
   ii. misrepresenting the character, amount, and legal status of the subject loan;
   iii. misrepresenting and assessing wrongful "default" related fees and attempting to collect those amounts – in contravention of the loan modification – when collection of those amounts was not authorized by contract or law;
   iv. misrepresenting an escrow "shortage" when no shortage existed; and
   v. refusing to accurately communicate with Azeem or respond to her inquiries.

69. Azeem suffered damages as set forth in paragraphs 57 and 58 that were proximately caused by OneWest and Ocwen's conduct in violation of the FDCPA.

   WHEREFORE, Plaintiff SHAHNAAZ A. AZEEM requests that this Honorable Court:

   a. enter judgment in her favor and against OneWest and Ocwen;
   b. award Azeem statutory and actual damages in an amount determined at trial; and
   c. award Azeem costs and reasonable attorney fees under 15 U.S.C. §1692k.

### COUNT III – VIOLATION OF ILLINOIS CONSUMER FRAUD ACT
### (AGAINST ONEWEST AND OCWEN)

70. Azeem restates and realleges paragraphs 1 through 58 as if stated herein.

71. OneWest and Ocwen violated ICFA by employing unfair and deceptive acts and practices when dealing with Azeem. Azeem is a "consumer" and "person." *See* 810 ILCS 505/1, 505/2.

72. The acts and practices occurred in the course of conduct involving trade or commerce.

73. OneWest and Ocwen made outright unfair and deceptive representations to Azeem as to the status the modification and escrow, amounts owed, the judicial sale, how Azeem *should* act, and their actual treatment of her account internally compared to their representations to Azeem.

74. It was unfair and deceptive for OneWest and Ocwen to:

   i. ignore the loan modification and Azeem's true account history;
   ii. falsely claim that it could conduct a judicial sale, when no such right existed;
   iii. send Azeem notices with false and misleading information, including that Azeem owed "default" and foreclosure related fees and costs after the loan modification;
   iv. falsely claim that Azeem had an escrow shortage; and
   v. misrepresent "default" related fees and escrow charges on a loan that was not in default.

75. It was unfair for OneWest and Ocwen to refuse to provide any explanation or basis for their conduct over the course of 16 months or in response to Azeem's disputes.

76. Azeem incorporates herein the unfair and deceptive conduct in paragraph 68 above.

   a. **Public Policy, Immoral Actions, and Substantial Injury to Consumers**

77. OneWest and Ocwen's conduct offends public policy as it demonstrates an industry-wide practice of charging illegal fees and escrow charges to a borrower in order to make a profit, forcing borrowers to make loan modification payments without properly crediting the payments, misrepresenting material facts, sending conflicting correspondences, falsely threatening foreclosure sales, with the intention of ultimately selling the real estate at a foreclosure sale.

78. OneWest and Ocwen's actions cause substantial injury to consumers generally because:

  i. consumers reasonably expect that banks and loan servicers will communicate with them truthfully and accurately regarding their account;
  ii. consumers reasonably expect that banks and loan servicers will not make false representations or induce payments on false pretenses;
  iii. consumers reasonably expect that, if there is a dispute, banks and loan servicers will make honest efforts to resolve the dispute expeditiously, instead of misrepresenting facts or not responding altogether; and
  iv. consumers reasonably expect that large corporations will honor and respect court orders dismissing foreclosure cases after binding loan modifications.

79. Additionally, consumers do not expect to be blindsided by notice of a foreclosure sale when their accounts are fully current.

80. Azeem could not avoid these immoral undertakings because OneWest and Ocwen would not accurately communicate with her. Azeem's inquiries and disputes were never investigated nor adequately answered; the lack of clarity resulted in an unsophisticated consumer entering into a perpetual state of confusion regarding the true status of her account.

81. When taken as a whole over the course of a year, OneWest and Ocwen's conduct was so unethical and unending that Azeem had no choice but to submit.

82. Azeem had no actual control over (a) her loan modification and escrow payments; (b) whether OneWest and Ocwen would attempt to sell the property; (c) the arbitrary collection attempts; (d) the assessment of default fees and costs: (e) how costs and fees were assessed or applied; (f) how OneWest and Ocwen truly treated the loan internally; and (g) whether what OneWest and Ocwen represented was truthful.

83. This conduct is part of a pattern and practice of behavior in which OneWest and Ocwen routinely engage as part of their business model. It is OneWest and Ocwen's normal business practice to disregard agreements and state and federal laws and regulations, and then misstate the nature of outstanding "debts" and amounts "owed" to consumers for their own pecuniary gain.

### b. Intent, Reliance, and Punitive Damages

84. OneWest and Ocwen's conduct was willful, malicious, and arbitrary. It was designed to place Azeem's account in a perpetual state of "default," while taking advantage of a emotionally and financially vulnerable borrower who spoke English as a second language.

85. OneWest and Ocwen's overall scheme was designed and intended to (a) trick Azeem into making timely payments on the loan modification while continuing to hold Azeem in "default;" and (b) discourage Azeem from continuing to fight for her home and eventually "give up."

86. OneWest and Ocwen's communications were intentionally confusing, misleading, and designed to keep Azeem in a state of confusion while profiting from her payments, and then ultimately sell her home at a foreclosure auction.

87. Azeem did rely on OneWest and Ocwen's conduct by making all of the payments, including those at the higher amount after the escrow "increase," spending time to make repeated disputes and inquiries, and having to hire and pay for attorneys to stop the foreclosure sale.

88. Azeem suffered damages as set forth in paragraphs 57 and 58 that were proximately caused by Ocwen and OneWest's conduct in violation of the ICFA.

89. An award of punitive damages is appropriate because OneWest and Ocwen's conduct was outrageous, willful, and wanton, and showed a reckless disregard for the rights of Azeem over the course of a year. Additionally, when Azeem objected, OneWest and Ocwen attempted to silence Azeem by falsely claiming a default and scheduling a judicial sale of the property.

WHEREFORE, Plaintiff SHAHNAAZ A. AZEEM requests that this Honorable Court:

a. enter judgment in Azeem's favor and against OneWest and Ocwen;
b. award Azeem actual and punitive damages in an amount to be determined at trial;
c. award Azeem costs and reasonable attorney fees under 815 ILCS 505/10a(c); and
d. award any other relief as this Honorable Court deems just and appropriate.

### COUNT IV – VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT
### (AGAINST OCWEN)

90. Azeem repeats and realleges paragraphs 1 through 58 as though fully set forth herein.

91. The subject loan is a "federally related mortgage" under RESPA and 12 C.F.R. 1024.2.

92. Ocwen qualifies as a "servicer" under RESPA § 2605(i)(2) and 12 C.F.R. 1024.2.

    a. **Violation of §§ 2605(e)(2) & (k) and 12 C.F.R. 1024.35(e)**

93. RESPA § 2605(e)(2) and 12 C.F.R. 1024.35(e)(3) require a loan servicer, within 30 days of receipt of a RFI or NOE, to (i) make corrections to the account and provide the borrower a written notice; or (ii) conduct an investigation and provide the borrower a written explanation as to why the servicer believes its servicing is correct; or (iii) conduct an investigation and provide the borrower a written explanation as to why the requested information is not available.

94. Additionally, any written response <u>must</u> include the name and telephone number of a representative of the loan servicer who can provide assistance to the borrower.

95. With respect to the RFI and NOE sent by Azeem to Ocwen on June 20, 2016, Ocwen (a) did not make corrections to the account, (b) did not conduct a reasonable investigation, and (c) did not respond to Azeem in one of the three methods allowed under RESPA § 2605(e)(2) and 12 C.F.R. 1024.35(e)(3). *See* Exhibits C and D.

96. Ocwen did not provide Azeem with a name and phone number of a Ocwen representative who could provide assistance to Azeem. *See* Exhibit D.

97. Lastly, Azeem's June 20, 2016 NOE and RFI requested the identity of the owner of the mortgage loan. *See* Exhibit C.

98. Ocwen did not respond to Azeem's request for the identity of the owner of the mortgage loan within 10 business days in violation of RESPA § 2605(k). *See* Exhibit D.

99. Ocwen's failure to comply with RESPA is part of a pattern of practice of non-compliance with the provisions of RESPA.

WHEREFORE, Plaintiff SHAHNAAZ A. AZEEM requests that this Honorable Court:

a. grant judgment in Azeem's favor and against Ocwen;

b. award Azeem actual and additional damages pursuant to RESPA § 2605(f);

c. award Azeem reasonable attorney's fees and costs pursuant to RESPA § 2605(f); and

d. award any other relief this Honorable Court deems equitable and just.

**AZEEM DEMANDS TRIAL BY JURY**

Respectfully Submitted,

By: \_\_\_*/s/ Mara A. Baltabols*_____
Mara A. Baltabols (#6299033)
Sulaiman Law Group
Ross Zambon (# 6279456)
Zambon Law Ltd.
Sulaiman Law Group, Ltd. (*of Counsel*)
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone: (630) 575-8181