**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| SHAHNAAZ A.R. KHAN f/k/a | ) | Case No. 16-cv-08074 |
| SHAHNAAZ A. AZEEM, | ) | |
| | ) | Honorable Manish S. Shah |
| Plaintiff, | ) | |
| | ) | Magistrate Judge: Mary M. Rowland |
| vs. | ) | |
| | ) | |
| ONEWEST BANK, F.S.B., and OCWEN | ) | |
| LOAN SERVICING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO ADDITIONAL UNDISPUTED MATERIAL FACTS**
**PURSUANT TO LOCAL RULE 56.1 AND THIS COURT'S STANDING ORDER**

1.      On September 25, 2013, IndyMac, a division of OneWest Bank, offered Azeem and her ex-husband Ahmed Azeem ("Ahmed") a trial period plan loan modification under the Home Affordable Modification Program ("HAMP"), with three trial period payments in the amount of $3,788.15 due by 11/01/2013, 12/01/2013, and 01/01/2014 ("first HAMP offer"). *See* **Exhibit A** attached (Azeem000018).

**RESPONSE**: Defendants CIT Bank, N.A. f/k/a OneWest Bank N.A. (f/k/a OneWest Bank, FSB) ("CIT") and Ocwen Loan Servicing, LLC ("Ocwen), (collectively "Defendants"), object to Plaintiff's Additional Fact No. 1 because it does not concern the March 2015 loan modification offer at issue in this case and is thus irrelevant.  Further responding, Defendants state that Plaintiff's Exhibit A speaks for itself.   *See* Plaintiff's Additional Statement of Undisputed Material Facts ("Plaintiff's SOF"), Exhibit A, DE 77-1.  Pursuant to the Court's standing order, the Court should disregard Plaintiff's Additional Fact No. 1.

2.      Ocwen became Azeem's loan servicer in November 1, 2013.  On November 27, 2013, Ocwen offered Azeem and Ahmed a different trial period plan loan modification under

HAMP, with three trial period payments in the amount of $3,455.18 due by 01/01/2014, 02/01/2014 and 03/01/2014 ("second HAMP offer").  *See* **Exhibit B** attached (Azeem000019).

**RESPONSE**: Defendants do not dispute that servicing for Plaintiff's loan transferred to Ocwen on November 1, 2013.  Defendants object to the remainder of Plaintiff's Additional Fact No. 2 because it does not concern the March 2015 loan modification offer at issue in this case and is thus irrelevant.  Further responding, Defendants state that Plaintiff's Exhibit B speaks for itself.  *See* Plaintiff's SOF, Exhibit B, DE 77-2.  Pursuant to the Court's standing order, the Court should disregard Plaintiff's Additional Fact No. 2.

3.      Simultaneously on November 27, 2013, the first HAMP offer from OneWest was converted into a permanent modification.  *See* **Exhibit C** attached, the April 27, 2015 letter to Azeem from Ocwen's Office of the Consumer Ombudsman (Ocwen000381-000383).

**RESPONSE**: Defendants object to Plaintiff's Additional Fact No. 3 because it does not concern the March 2015 loan modification offer at issue in this case and is thus irrelevant. Further responding, Defendants dispute that the trial payment plan ("TPP") Ocwen offered in November 2013 under the Home Affordable Modification Program ("HAMP") converted into a permanent modification after Plaintiff made trial payments.  Additionally, Defendants clarify that Plaintiff was required to return a fully executed loan modification agreement to accept the permanent loan modification approved by Plaintiff's former servicer.  *See* Plaintiff's SOF, Exhibit C, DE 77-3 at page 2 of 4.  To the extent a further response is required, Defendants state that Plaintiff's Exhibit C speaks for itself.  *See id*.  Pursuant to the Court's standing order, the Court should disregard Plaintiff's Additional Fact No. 3.

4.      On December 17, 2013, Ocwen sent Azeem and Ahmed a Notice of Intent to Terminate Forbearance for their failure to make the scheduled payments of $3,788.15 set forth in

the first HAMP offer, indicating that one forbearance payment was past due. *See* **Exhibit D** attached, Ocwen's Notice to Terminate Forbearance (Azeem000020-000021).

      **RESPONSE**: Defendants object to Plaintiff's Additional Fact No. 4 because it does not concern the March 2015 loan modification offer at issue in this case and is thus irrelevant. Further responding, Defendants state that Plaintiff's Exhibit D speaks for itself. *See* Plaintiff's SOF, Exhibit D, DE 77-4. Pursuant to the Court's standing order, the Court should disregard Plaintiff's Additional Fact No. 4.

      5.     Azeem and Ahmed made four timely trial period payments under the second HAMP offer, but when they attempted to make the fifth trial period payment of $3,455.18, Ocwen would not accept it. *See* **Exhibit C** attached (Ocwen000381-000383). *See* **Exhibit C** attached (Ocwen000382); *See also* Defendants' LR 56.1(a)(3) Statement of Undisputed Facts (hereinafter "D SOF") at p. 73, lines 7-11, 21-24 (Ortwerth deposition).

      **RESPONSE**: Defendants object to Plaintiff's Additional Fact No. 5 because it does not concern the March 2015 loan modification offer at issue in this case and is thus irrelevant. Further responding, Defendants dispute that the TPP Ocwen offered in November 2013 under the HAMP converted into a permanent modification after Plaintiff made trial payments. Ocwen's November 2013 TPP offer required Plaintiff to return the fully executed modification agreement to accept the offer. *See* Plaintiff's Additional Statement of Facts, Exhibit C, DE 77-3 at page 2 of 4. To the extent a further response is required, Defendants state that Plaintiff's Exhibit C speaks for itself. *See* Plaintiff's SOF, Exhibit C, DE 77-3. Pursuant to the Court's standing order, the Court should disregard Plaintiff's Additional Fact No. 5.

6.    On March 11, 2015, Ocwen's representative, Veronica Joya, called Azeem to advise that she had been approved for a third loan modification called a Shared Appreciation Modification ("SAM").  Joya set forth the following terms of the proposed SAM:

| | |
|---|---|
| "New Principal Balance" | $723,002.25 |
| Deferred Principal Balance | $272,702.25  (non-interest bearing) |
| Interest Bearing Principal Balance | $450,300.00 (at 2.00019% interest) amortized over 480 months with a *maturity date of 02/01/2036* |
| Monthly Principal & Interest | $1,363.67 |
| Estimated Monthly Escrow | $1,090.22 (adjusts annually) |
| Total Monthly Payment | $2,453.89 (beginning 06/01/2015) |
| BALLOON PAYMENT | ***Undisclosed on Balloon Disclosure*** |
| Balloon Payment | $261,272.77[1] (interest bearing) |

*See* **Exhibit E** attached, the fully executed SAM (Ocwen001103-001112).  *See also* Exhibit E of D SOF (Affidavit of Katherine Ortwerth) at Exhibit 1 pp. 10, 11, 12, 17 (of 63). [DE #65-5 Complaint (DE 1, ¶¶ 13, 15; DE 1-1).

**RESPONSE**: Defendants do not dispute that Veronica Joya spoke with Plaintiff on March 11, 2015 and notified her that she was approved for a Shared Appreciation Modification ("SAM") offer and that Ms. Joya discussed the terms of the SAM offer with Plaintiff.  To the extent Plaintiff's Additional Fact No. 6 contains statements that are contrary to the transcript of the March 11, 2015 phone call, Defendants dispute those statements as unsupported.  *See* Defendants' Statement of Undisputed Material Facts ("Defendants' SOF"), ¶ 9, Exhibit E, Exhibit 1, ¶ 10, DE 72 & DE 65-5.

7.    Ocwen's representative, Veronica Joya, advised Azeem that after she made the two trial payments under the SAM, Azeem would receive the final modification. *See* Tab "Ex. E" (Defendants' 56.1(a)(3) statement at Exhibit 1 to Affidavit of Katherine Ortwerth, p. 14 (of 63). [DE 65-5.]

---

[1] The Balloon Disclosure, Complaint (DE 1-1, page 13 of 15) does not state an amount. Exhibit 1 to Affidavit of Katherine Ortwerth (Transcription of March 11, 2015 telephone conversation - DE 65-5, pages 11 and 17 of 63) states the "balloon payment at maturity of $261,272.77."

4

**RESPONSE**: Defendants dispute that Plaintiff's conversation with Ms. Joya on March 11, 2015 limits the express terms of the SAM offer dated Mach 11, 2015, which required Plaintiff to return the fully executed SAM Agreement by April 1, 2015, to accept the modification offer.  *See* Defendants' SOF, ¶ 12, DE 72.  To the extent Plaintiff's Additional Fact No. 7 contains statements that are contrary to the transcript of the March 11, 2015 phone call, Defendants object to those statements as unsupported.  *See* Defendants' SOF, ¶ 9, Exhibit E, Exhibit 1, ¶ 10, DE 72 & DE 65-5.

8.      Joya also asked Azeem if she would like to "verbally accept this modification." *Id.*

**RESPONSE**: Undisputed, but Defendants clarify that Plaintiff declined to verbally accept the loan modification.  Defendants' SOF, ¶ 9, Exhibit E, Exhibit 1, DE 72 & DE 65-5 at page 14 of 63.

9.      The March 11, 2015 SAM stated that the loan documents would be modified after Azeem successfully completed the trial period, after Ocwen ensured the title is clear, and after Ocwen returns a signed copy of the agreement to Azeem. *See* Tab "Ex. C" (Defendants' 56.1(a)(3) statement – Ortwerth deposition at p. 57, lines 16-24); *See also* Complaint, Exhibit A (DE 1-1) at p. 6 of 15, ¶ 1-B).

**RESPONSE**: Defendants state that the SAM Agreement speaks for itself.  *See* Defendants' SOF, ¶ 8, DE 72.  Further responding, Defendants state that before the SAM Agreement could be enforced, Plaintiff was first required to accept the SAM offer by returning a fully executed copy of the SAM Agreement by April 1, 2015.  *See* Defendants' SOF, ¶ 12, DE 72.

10.      One of two cover letters sent with the SAM stated that in order for the terms of the SAM to become effective, Azeem was required "to make an initial payment of $2,453.89 on

or before 4/1/2015 and one (1) Trial Payment of principal and interest[2] in the amount of $2,453.89 to Servicer on or before 5/1/2015 ("SAM Trial Period"). *See* Complaint, Exhibit A (DE 1-1) at page 4 of 15.

**RESPONSE**: Disputed. The "cover letter" that Plaintiff refers to in her Additional Fact No. 10 is the Shared Appreciation Modification Offer, which expressly provided that Plaintiff was required to complete two steps to accept the SAM offer: (1) complete and return the SAM agreement by 4/1/15 and (2) make an initial and trial period payment on time. *See* Defendants' SOF, ¶ 12, DE 72.

11.     Azeem faxed and mailed the executed SAM to Ocwen several times, but Ocwen claimed they never received it. Tab "Ex. F" (Defendants' 56.1(a)(3) statement – Kahn deposition at page 38, lines 17-19; page 40, lines 11-13; page 45, lines 1-8; pages 46-47, lines 13-18, 21-24, 1-5; page 48, lines 12-16).

**RESPONSE:** Disputed. Plaintiff did not submit a <u>fully</u> executed SAM Agreement, signed by <u>both</u> Plaintiff and her ex-husband Ahmed Azeem ("Ahmed") by April 1, 2015. The first time Ocwen received a fully executed SAM Agreement was on August 5, 2015. *See* Defendants' SOF, ¶¶ 56-57, DE 72. Further responding, Defendants state that Plaintiff conceded multiple times after April 1, 2015 that Ahmed had not signed the SAM Agreement. *See, e.g., id.*, ¶¶ 26-30, 40-45. Additionally, Ahmed, himself, confirmed that as of June 1, 2015, he had not signed the SAM Agreement. *See id.*, ¶¶ 36-38.[3]

---

[2] Ocwen incorrectly states the trial payment amount of principal and interest as $2,453.89 in Paragraph 1-C of the Loan Modification Agreement. Paragraph 2-E of the Loan Modification Agreement states the monthly principal and interest payment amount of $1,363.67, with the estimated monthly escrow payment amount of $1,090.22, for a total monthly principal and interest and escrow payment of $2,453.89.

[3] Plaintiff notes that Ahmed stated "I sign, my wife sign, whatever, who did not?" Plaintiff's Response to Defendants SOF, ¶ 38, DE 75. That comment was a question in response to the Ocwen representative advising Ahmed that the SAM Agreement had not been fully executed. *Id.* When questioned further

12.     On March 31, 2015, Azeem called Ocwen and spoke with George Ross in the Home Retention Office.  Azeem informed Ross that there was a review of Ocwen's denial of her HAMP modification underway (the first and second HAMP offers).  Ross advised Azeem that Ocwen normally does not get to a SAM modification without first having gone through the government's HAMP program first. *See* **Exhibit F** attached (Transcript of 03/31/2015 telephone conversation between Azeem and George Ross, page 9, lines 11-14).[4]

**RESPONSE:**  Defendants dispute that the March 31, 2015 phone call changed the express terms of the SAM offer.  Further responding, Defendants state that the transcript of the March 13, 2015 phone call speaks for itself.  *See* Plaintiff's SOF, ¶ 12, Exhibit F, DE 77-6.

13.     Azeem advised Ross that she did not want to send back the SAM agreement until the review of the HAMP modification denial was complete.  *Id*. at pages 11-18.

**RESPONSE:**  Defendants state that the transcript of the March 13, 2015 phone call speaks for itself.  *See* Plaintiff's SOF, ¶ 12, Exhibit F, DE 77-6.

14.     Ross advised Azeem that her loan was coded as ineligible for HAMP, but Ocwen's records neither gave a date nor a reason that Azeem was ineligible for HAMP. *Id.* (pages 13-14, lines 7-24, 1-3).

**RESPONSE:**  Defendants state that the transcript of the March 13, 2015 phone call speaks for itself.  *See* Plaintiff's SOF, ¶ 12, Exhibit F, DE 77-6.

---

about the signatures, Ahmed admitted two times that he had not signed the SAM Agreement.  *Id*.  Ahmed stated, "A.  I don't know, I know if she signed it but I did not.  Q.  You don't know.  Have you spoke with your wife?  A.  I did not sign."  *Id*.

[4] The details of the March 31, 2015 at 5:36:12 PM telephone conference between Azeem and Ross are not included on Ocwen's comments log produced at Ocwen001262 (see **Exhibit F** – transcript; **Exhibit G** – Ocwen001262).

15.     Ross told Azeem to hold onto the SAM agreement and wait until Azeem could work through it with her Relationship Manager, Veronica Joya, to make sure the SAM is the best deal for the Azeem. *Id*. at p. 12, lines 9-22.

**RESPONSE:**   Defendants dispute that the March 31, 2015 phone call changed the express terms of the SAM offer.  Defendants further dispute that Mr. Ross implied that Ocwen would honor the SAM offer if Plaintiff submitted the fully executed agreement four months after the April 1, 2015 deadline.  Further responding, Defendants state that the transcript of the March 13, 2015 phone call speaks for itself.  *See* Plaintiff's SOF, ¶ 12, Exhibit F, DE 77-6.

16.     Ross further assured Azeem that if she did not return the SAM agreement by April 1, 2015, the SAM modification would not be canceled. *Id*. at p. 15, lines 17-24; p. 16; p. 17, lines 1-3).

**RESPONSE:**   Defendants dispute that the March 31, 2015 phone call changed the express terms of the SAM offer.  Defendants further dispute that Mr. Ross assured that Ocwen would honor the SAM Agreement if Plaintiff submitted the fully executed agreement four months after the April 1, 2015 deadline.  Further responding, Defendants state that the transcript of the March 13, 2015 phone call speaks for itself.  *See* Plaintiff's SOF, ¶ 12, Exhibit F, DE 77-6.

17.     On April 27, 2015, Ocwen's Office of the Consumer Ombudsman responded to Azeem's concerns regarding the denial of her HAMP modification requests[5] by indicating Azeem failed to properly accept either the Tier 1 or Tier 2 HAMP modifications (*i.e.* the first and second HAMP offers).  The letter further instructed Azeem to return the SAM modification if she wished to accept it by the time set forth "on the offer" without specifying that time.  The April 27, 2015 letter is dated 26 days after the April 1, 2015 date set forth in one of the two cover

---

[5] The April 27, 2015 letter from the Office of the Consumer Ombudsman states that on 5/5/2014, it sent Azeem a notice including Options 1, 2 and 3 (Exhibit C).

letters provided to Azeem with the SAM. *See* **Exhibit C** attached; *see also* Complaint, Exhibit A (DE 1-1, p. 4 of 15).

**RESPONSE:** Defendants dispute that the April 27, 2015 correspondence changed the express terms of the SAM offer. Further responding, Defendants state that the April 27, 2015 correspondence speaks for itself. *See* Plaintiff's SOF, ¶ 17, Exhibit C, DE 77-3.

18. On May 4, 2015, Ocwen acknowledged that Azeem's final SAM trial plan payment had been received and the trial plan was now complete. *See* **Exhibit G** attached, Ocwen's Comment Log (Ocwen001280).

**RESPONSE:** Disputed. The May 4, 2015 comment that the trial payment plan was complete related to trial payments; the comment did not indicate that a fully executed SAM Agreement was received by April 1, 2015 as required by the SAM offer. *See* Plaintiff's SOF, ¶ 18, Exhibit C, DE 77-7 at Ocwen001280.

19. On May 19, 2015, Azeem called Ocwen and was advised by Ocwen representative, Frances Moreno, that Ocwen received "the Agreement" on May 11, 2015, that Azeem had made the two trial period payments on March 31, 2015 and May 1, 2015, and the Relationship Manager, loan setup department, and underwriting were working on completing the loan modification. *See* **Exhibit H** attached, Transcript of May 19, 2015 telephone conversation between Azeem and Frances Moreno, p. 7, lines 5-23.

**RESPONSE:** Disputed. The statement that Ocwen received "the Agreement" was not confirmation that Ocwen received a <u>fully executed</u> SAM Agreement or that "the Agreement" had been approved by underwriting. In response to Plaintiff's question if the modification was complete, Mr. Moreno advised Plaintiff that underwriting was reviewing the modification. *See* Plaintiff's SOF, ¶ 19, Exhibit H, DE 77-8 at p. 3, ll 11-23; p. 4, ll 2-24; p. 5, ll 1-18. The next

day, the agreement failed quality control because it did not include Ahmed's signature. Defendants' SOF, ¶ 35, DE 72 & 65-5.

20.     Moreno stated that Azeem did not have to do anything else because Azeem made the payments, returned the Agreement, and Azeem was not required to send anything else. *Id.* at p. 8, lines 2-8).

**RESPONSE**: Disputed.  Plaintiff mischaracterizes Mr. Moreno's statement.  Mr. Moreno advised Plaintiff that the loan modification was under review with underwriting.  *See* Plaintiff's SOF, ¶ 19, Exhibit H, DE 77-8 at p. 5, ll 1-18.  Mr. Moreno's statement that Plaintiff did not need to send anything else was based upon Plaintiff's assertion that she had "completed the modification agreement" and because the modification was pending underwriting review.  *See id.* at p. 5, ll 1-18; p. 6, ll 1-12; p. 8, ll 1-8.  Mr. Moreno did not advise Plaintiff that the modification was complete or that the SAM Agreement would be approved by underwriting.  *See id.* at p. 4, ll 19-24; p. 5, ll 1-17.

21.     According to the terms of the SAM, on June 1, 2015, the loan documents automatically became modified, and Azeem's escrow account was fully funded and contractually current. *See* Complaint, Exhibit A DE 1-1, pp. 6-7 of 15 (paragraph 2 of the SAM titled "**The Modification**").

**RESPONSE**: Disputed.   Plaintiff was required to return the fully executed SAM Agreement to accept the SAM offer.  Defendants' SOF, ¶ 12, DE 72.  Plaintiff did not return the fully executed SAM Agreement to Ocwen until August 5, 2015 (*see id.*, ¶ 57, DE 72 & 65-3, 65-5); therefore, the SAM Agreement was not enforceable and Ocwen was not obligated to automatically modify Plaintiff's loan on June 1, 2015.  *See* Defendants' SOF, ¶ 12, DE 72.

22.     On June 11, 2015, Azeem spoke with Joya again. Joya represented that the agreement had been received and that Ocwen would be "expediting your file." Joya also set up a follow up call for modification being fully complete.  *See* **Exhibit I** attached, Transcript of June 11, 2015 telephone conversation between Azeem and Veronica Joya, pp. 3-4, lines 24, 1).

**RESPONSE**: Disputed.  Ms. Joya advised Plaintiff that Ocwen had received an agreement, but Ocwen would conduct a final review to make sure that it had all the information that it needed.  *See* Plaintiff's SOF, ¶ 22, Exhibit I, DE 77-9 at p. 3, ll. 12-17.  Ms. Joya did not confirm that Ocwen had received a <u>fully executed</u> SAM Agreement, signed by both Plaintiff and Ahmed, or that Ocwen would modify her loan without receipt of the fully executed SAM Agreement.  *Id.*

23.     On June 13, 2015, Ocwen's quality check was completed; no errors found. *See* **Exhibit G** attached (Ocwen001289).

**RESPONSE:** Disputed.  The comment that a quality check was done and no errors were found does not indicate that it relates to the SAM Agreement.  Plaintiff's SOF, Exhibit G, DE 77-7 at Ocwen001289.  Moreover, later comments in the comment log, including one dated June 29, 2015, confirm that Ocwen had <u>not</u> received the SAM Agreement executed by both Plaintiff and Ahmed.  *See id.* at Ocwen001291 ("MOD AGREEMENT REJECT . . . Agent reviewed notes and determined accurate. . . . advised it was research letter about rejection of mod agreement.  advised we needed signature from both borr or quit claim deed for borr who does not want to sign . . . .")

24.     On July 10, 2015, Joya called Azeem and represented that the final agreement was received and Azeem should be receiving it back signed and dated by Ocwen in up to about 60 days.  In the meantime, Ocwen would continue on the process of expediting her file

according to the modified terms and conditions in the SAM. *See* **Exhibit J** attached, Transcript of July 10, 2015 telephone conversation between Azeem and Joya, pages 3-7; 13-14. *See also* **Exhibit G** attached (Ocwen001297).

**RESPONSE**: Disputed. Ms. Joya advised Plaintiff that Ocwen had received an agreement, but Ms. Joya did not confirm that Ocwen had received a <u>fully executed</u> SAM Agreement, signed by both Plaintiff and Ahmed, or that Ocwen would modify her loan without receipt of the fully executed SAM Agreement. *See* Plaintiff's SOF, ¶ 24, Exhibit J, DE 77-10 at p. 3, ll. 3-20.

25.     On July 14, 2015, Ocwen responded to Azeem's request for an extension on the time to turn in the modification agreement by telling her that the one (loan modification agreement) *they received* was not notarized which, according to Ocwen, "was obviously incorrect," and suggesting that Azeem "forward a complete notarized modification agreement at the earliest to review the loan further for modification and avoid any denial." Tab "Ex. C" (Defendants' 56.1(a)(3) statement – Ortwerth deposition at page 180, lines 11-22; pages 181-182, lines 9-24, 13); *See also* **Exhibit K** attached, Ocwen's July 14, 2015 letter (Ocwen000506-000507).

**RESPONSE**: Defendants state that the July 14, 2015 correspondence speaks for itself. Further responding, Defendants state that the July 14, 2015 correspondence confirms that there were errors in the SAM Agreement that Plaintiff sent Ocwen. *See* Plaintiff's SOF, ¶ 25, Exhibit K, DE 77-11.

26.     On July 16, 2015, Ocwen denied Azeem's loan modification "because [she] failed to return the corrected final modification agreement within the required time frame," notifying Azeem of the denial by letter dated July 17, 2015. *See* **Exhibit L** attached, Ocwen's July 17,

2015 denial; *See also* Tab "Ex. C" (Defendants' 56.1(a)(3) statement – Ortwerth deposition at

pages 9697, lines 20-24, 1-2; 213, lines 13-22; 215, lines 8-13).

**RESPONSE:** Undisputed, but Defendants clarify that as of July 16, 2015, Ocwen had

not received a fully executed SAM Agreement. Defendants' SOF, ¶¶ 52, 57, DE 72. Because

Ocwen had not received the fully executed SAM Agreement, it denied Plaintiff's loan

modification in a letter dated July 17, 2015. *Id.*, ¶ 52.

27. The only "time frame" referenced in the documents related to the SAM are

contained in one of the two cover letters sent to Azeem. This is the April 1, 2015 date. There is

no date of return for the document in the SAM itself. *See* Complaint, Exhibit A (DE 1-1, pages 4

of 15; 6 of 15, paragraph 1 of the SAM); Tab "Ex. C" (Defendants' 56.1(a)(3) statement –

Ortwerth deposition at page 97, lines 3-11); *See also* **Exhibit E** attached.

**RESPONSE:** Disputed. The "cover letter" that references the April 1, 2015

deadline is the SAM modification <u>offer</u>. *See* Defendants' SOF, ¶ 12, DE 72. The SAM

offer required that Plaintiff return the fully executed SAM Agreement by April 1, 2015,

to accept the loan modification offer. *Id.* The SAM Agreement was not enforceable until

Plaintiff satisfied the requirements to accept the SAM Offer, including sending a fully

executed SAM Agreement to Ocwen by April 1, 2015. *Id.*

28. Azeem made timely monthly payments to Ocwen pursuant to the March 2015

SAM via automatic withdrawal on May 29, 2015 (June 2015 payment), July 1, 2015, and August

3, 2015. Complaint (DE 1, ¶¶ 23-24); Tab "Ex. C" (Defendants' 56.1(a)(3) statement – Ortwerth

deposition at page 58, lines 12-23).

**RESPONSE:** Disputed as inconsistent with Katherine Ortwerth's testimony. *See*

Defendant's SOF, Exhibit C, DE 65-3 at p. 58, ll. 12-23. Further responding, Defendants dispute

that the payments were made under a binding SAM Agreement because Plaintiff failed to accept the SAM Agreement by the April 1, 2015 due date and, as of the alleged August 3, 2015 payment, Plaintiff still had not submitted the fully executed SAM Agreement.  *See* Defendants' SOF, ¶ 12, DE 72; *id.*, ¶ 57.

29.     On August 5, 2015, Ocwen acknowledged receipt of the original signed SAM, with Azeem's and Ahmed's signatures dated April 30, 2015. Tab "Ex. C" (Defendants' 56.1(a)(3) statement – Ortwerth deposition at page 97, lines 17-24; page 183, lines 12-24).

**RESPONSE**:  Disputed.  Defendants do not dispute that Ocwen confirmed receipt of the fully executed SAM Agreement on August 5, 2015, but Defendants dispute that Ocwen confirmed receipt of the fully executed SAM Agreement before the conversations discussed in paragraphs 30 and 31 below.  *See* Plaintiff's SOF, ¶ 31, Exhibit N, DE 77-14; Defendants' SOF, ¶ 57, Exhibit C, DE 7 & 65-3 at p. 97, lines 17-24.

30.     On August 5, 2015, at 10:15:16 a.m., Meditto Fernandes called Azeem and advised her that the modification was approved, that she successfully made the trial payments, that Ocwen received the Agreement, and Fernandes was putting in a request to complete the modification on the account and then the account would be permanently modified. Fernandes stated that the process could take a week to a week and a half to complete, and Fernandes scheduled a follow-up call on September 1, 2015. *See* **Exhibit M** attached, Transcript of August 5, 2015, telephone conversation between Azeem and Fernandes, p. 4, lines 18-24; p. 5, lines 8-14); *See also* **Exhibit G** attached (Ocwen001301 at 10:18:52 a.m.).

**RESPONSE**: Disputed.  Mr. Fernandes informed Plaintiff that "I see modification was approved. You successfully made the trial payments.  We did receive the agreement and right now I'll be putting a request to complete the modification on the account."  *See* Plaintiff's SOF, Exhibit

M, DE 77-13 at p. 4, ll. 18-23.  This statement only confirmed that Plaintiff was approved for a loan modification, not that the SAM Agreement had been approved for completion.  *See id.*  This clarification is supported by the fact that Mr. Fernandes said he would put in a request to complete the modification.  *See id.*  Had the SAM Agreement already been approved for completion, a statement that Mr. Fernandes would submit a request to complete the modification would be nonsensical.

31.     Less than two hours later on August 5, 2015, at 11:55:49 a.m., Fernandes called Azeem to advise her that he had gone back through her loan account and was calling to inform her that the Agreement was rejected because it was not signed by Azeem and Ahmed on all of the pages (page 7, 8, & 10).  Azeem stated that all pages were signed and faxed to Ocwen, and Fernandes instructed her to fax the Agreement again, but there was a possibility that Azeem's modification may be denied if Fernandes did not get the Agreement. *See* **Exhibit N** attached (Transcript of August 5, 2015, 11:55:49 a.m. telephone conversation between Azeem and Fernandes, pp. 3-12); *See also* **Exhibit G** attached (Ocwen001301 at 12:09:02 PM).

**RESPONSE:**  Defendants state that the transcript of the August 5, 2015, 11:55:49 a.m. phone call speaks for itself.  *See* Plaintiff's SOF, Exhibit N, DE 77-14.

32.     On August 5, 2015, at 10:47:31 P.M., Ocwen acknowledged "SAM Original mod Agreement received." *See* **Exhibit G** attached (Ocwen001302); *See also* Tab "Ex. C" (Defendants' 56.1(a)(3) statement – Ortwerth deposition at p. 97, lines 17-20).

**RESPONSE:** Undisputed.

33.     On August 6, 2015 and August 29, 2015, Azeem received notices from Ocwen through her online account that confirmed the permanent loan modification. See **Exhibit O** attached, Ocwen's online application status (Azeem000453-000454); Complaint (DE 1, ¶ 25).

**RESPONSE:** Disputed. The on-line account summary that Plaintiff relies upon only confirms that Plaintiff was underlined approved for a permanent modification. There is no dispute that Plaintiff was approved for a modification, but the summary does not confirm that the SAM Agreement was complete and that Plaintiff's loan would be modified. In fact, the on-line summary advised Plaintiff that "[t]he original modification documents must be mailed as directed. Uploaded originals cannot be accepted and will delay the closing of your modification." Plaintiff's SOF, Exhibit O, DE 77-15.

34. Azeem engaged in a series of conversations with Ocwen about whether or not the denial of the modification could be reversed but was ultimately told that the denial could not be reversed and that she would have to reapply for a loan modification. Tab "Ex. C" (Defendants' 56.1(a)(3) statement – Ortwerth deposition at p. 98, lines 1-12).

**RESPONSE:** Undisputed.

35. Azeem expressed her dissatisfaction with Ocwen's decision but, nevertheless, continued to timely tender all payments to Ocwen. Tab "Ex. C" (Defendants' 56.1(a)(3) statement – Ortwerth deposition at p. 58, lines 12-23; p. 98, lines 13-23).

**RESPONSE:** Disputed as inconsistent with Katherine Ortwerth's testimony. Ms. Ortwerth testified that some of Plaintiff's payments were rejected. *See* Defendants' SOF, Exhibit C at p. 98, ll. 18-23; p. 99, ll. 3-5, DE 65-3.

36. On August 17, 2015, Ocwen removed the foreclosure hold against Azeem and her property. Tab "Ex. C" (Defendants' 56.1(a)(3) statement – Ortwerth deposition at p. 216, lines 1323; p. 217-218, lines 15-22, 1-9).

**RESPONSE:** Undisputed.

37.     On September 4, 2015, Azeem sent her September 2015 SAM payment to Ocwen in the form of a cashier's check by certified mail. Complaint (DE 1, ¶ 28); Tab "Ex. C" (Defendants' 56.1(a)(3) statement – Ortwerth deposition at pages 103-104, lines 19-24, 1-4).

**RESPONSE:** Undisputed.

38.     On September 7, 2015, Azeem emailed a dispute to Ocwen regarding the modification not being updated or completed, which Ocwen denied. Tab "Ex. C" (Defendants' 56.1(a)(3) statement – Ortwerth deposition at p. 184, lines 8-24).

**RESPONSE:** Disputed.  Defendants admit that Plaintiff emailed a dispute to Ocwen dated September 7, 2015.  Further responding, Defendants state that Plaintiff failed to satisfy the requirements to accept the SAM offer; therefore, Ocwen was not obligated to modify Plaintiff's loan. *See* Defendants' SOF, ¶ 12, DE 72; *id.*, ¶ 57.

39.     Ocwen rejected and returned Azeem's September 2015 payment. Complaint (DE 1, ¶ 29); Tab "Ex. C" (Defendants' 56.1(a)(3) statement – Ortwerth deposition at pp. 103-104, lines 19-24, 1-15).

**RESPONSE:** Undisputed.

40.     On September 16 2015, Ocwen instructed its foreclosure attorneys to publish the notice of the October 15, 2015 foreclosure sale of the Azeem's property. Tab "Ex. C" (Defendants' 56.1(a)(3) statement – Ortwerth deposition at page 193, lines 3-21).

**RESPONSE:**  Disputed as a mischaracterization of Katherine Ortwerth's testimony.  Ms. Ortwerth testified that on September 16, 2015, Ocwen's counsel published a notice of sale on behalf of Ocwen; she did not testify as to any communications between Ocwen and its counsel. *See* Defendants' SOF, Exhibit C at p. 193, ll. 8-21, DE 65-3.

41. On September 23, 2015, upon the advice of Ocwen, Azeem sent two certified checks, each in the amount of $2,453.89, to Ocwen by certified mail for her September and October 2015 payments. Complaint (DE 1, ¶¶ 30, 31); Tab "Ex. C" (Defendants' 56.1(a)(3) statement – Ortwerth deposition at pages 115-116, lines 22-24, 1-12).

**RESPONSE:** Disputed. There is no evidence confirming that Plaintiff sent payment to Ocwen on September 23, 2015 *upon the advice of Ocwen.* Further, Katherine Ortwerth testified that Ocwen rejected those funds on September 29, 2015. *See* Defendants' SOF, Exhibit C at p. 116, ll. 5-12, DE 65-3.

42. On November 5, 2015, Ocwen agreed that Azeem's loan was previously modified, signed the March 11, 2015 Loan Modification Agreement, and returned a copy of fully executed Agreement to Azeem on November 9, 2015. *See* **Exhibit E** attached; *See also* Tab "Ex. C" (Defendants' 56.1(a)(3) statement – Ortwerth deposition at p. 199, lines 2-8).

**RESPONSE:** Disputed. Ocwen never agreed that Plaintiff's loan was previously modified prior to executing the SAM Agreement on November 9, 2015. Nor did Ocwen admit that it was obligated to modify Plaintiff's loan under the SAM Agreement. Ocwen only agreed to modify Plaintiff's loan after expiration of the SAM offer to resolve Plaintiff's dispute. *See* Defendants' SOF, ¶ 62, DE 72.

43. Azeem timely made all loan modification payments since April 1, 2015 and her loan is current. *See* Tab "Ex. C" (Defendants' 56.1(a)(3) statement – Ortwerth deposition at p. 58, lines 12-19; p. 123, lines 2-4).

**RESPONSE:** Disputed. Defendants admit that Plaintiff's loan is current, but disputes the remainder of Plaintiff's Additional Fact No. 43 as inconsistent with Katherine Ortwerth's testimony, which provided that "[t]here was a time period where [Ocwen] [was not] accepting

payments but she's made up for those payments and I believe she is current today."  Defendants'
SOF, Exhibit C at p. 58, ll. 16-19, DE 65-3.

44.     Ocwen has a long history of serious problems with its mortgage servicing
practices. Specifically, Ocwen has regulatory settlements with the State of New York Department
of Financial Services in 2011, 2012, and 2014. Ocwen also resolved litigation by the Consumer
Financial Protection Bureau (CFPB), 49 States' Attorneys General and Banking regulators in
December of 2013 which became a consent judgment in February 2014. Numerous cease and
desist orders were issued by various state regulators in 2017 relating to continued unremedied
mortgage servicing failures arising from the same conduct giving rise to the February 2014
consent decree with the States and the CFPB.[6]

**RESPONSE:**  Defendants object to Plaintiff's Additional Statement No. 44 as irrelevant
and unfairly prejudicial.  Plaintiff seeks to impose liability on Ocwen based upon regulatory
actions and consent judgments that do not involve this case or Plaintiff's loan.  Fed. R. Evid. 402
provides that "[i]rrelevant evidence is not admissible."  Similarly, Rule 403 provides that the
"court may exclude relevant evidence if its probative value is substantially outweighed by a
danger of . . . unfair prejudice . . . ."  Rule 404 prohibits the use of evidence of a "person's
character or character trait . . . to prove that on a particular occasion the person acted in
accordance with the character or trait."

There is no evidentiary basis to allow discussion of regulatory actions and consent
judgments involving Ocwen.  These statements/discussions have nothing to do with this
case.  Moreover, the "evidence" is not permissible character evidence under Rule 404.  The
evidence is not a character trait that is relevant to a single issue in this case.  Rather, the only

---

[6] The Court may take judicial notice of all of these consent decrees and cease and desist orders pursuant
to *Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996).

rationale for seeking to introduce the above referenced evidence would be an improper attempt to impugn the "corporate character" of Ocwen.

Under Rules 402, 403, and 404 such "evidence" is not relevant to the issues in this litigation, is more prejudicial than probative, and is not permissible corporate character evidence. Thus, pursuant to the Court's standing order, the Court should disregard Plaintiff's Additional Fact No. 44.

45.     The September 1, 2011 Ocwen and the New York State Department of Financial Services (NYDFS) entered into an agreement which "required Ocwen to: (1) establish and maintain sufficient capacity to properly board and manage its significant portfolio of distressed loans; (2) engage in sound document execution and retention practices to ensure that mortgage files were accurate, complete, and reliable; and (3) implement a system of robust internal controls and oversight with respect to mortgage servicing practices performed by its staff and third-party vendors." *See* **Exhibit P** attached, State of New York Department of Financial Services Banking Department Agreement on Mortgage Servicing Practices with Ocwen (Azeem000467-000487).

**RESPONSE**: Defendants incorporate their objections in response to Plaintiff's Additional Fact No. 44.  Pursuant to the Court's standing order, the Court should disregard Plaintiff's Additional Fact No. 45.

46.     On December 5, 2012, NYDFS entered into a second settlement with Ocwen arising from NYDFS's targeted examination of Ocwen to assess its compliance with the September 2011 agreement and applicable New York law. NYDFS determined Ocwen was not in compliance with the earlier agreement including pursuing foreclosure actions against certain borrowers who are seeking a loan modification, failing to conduct a review of certain loan modification denials; failing to sufficiently document actions required to ensure that prior modification efforts are not rendered

futile upon transfer of a servicing file to or from Ocwen. This Order required Ocwen to hire a monitor to gauge its compliance with earlier agreements and applicable law. *See* **Exhibit Q** attached, NYDFS December 5, 2012 Consent Order (pp. 3-5 of Azeem000574-000582).

    **RESPONSE**: Defendants incorporate their objections in response to Plaintiff's Additional Fact No. 44. Pursuant to the Court's standing order, the Court should disregard Plaintiff's Additional Fact No. 46.

    47.    On December 22, 2014, Ocwen and the NYDFS entered into a third Consent Order addressing issues with Ocwen's servicing of mortgage loans and its regulatory history with the Department. *See* **Exhibit R** attached, NYDFS December 22, 2014 Consent Order (Azeem000957-000978).

    **RESPONSE**: Defendants incorporate their objections in response to Plaintiff's Additional Fact No. 44. Pursuant to the Court's standing order, the Court should disregard Plaintiff's Additional Fact No. 47.

    48.    The NYDFS identified "deficiencies in Ocwen's servicing platform and loss mitigation infrastructure, including[....] (c) missing documentation, (d) wrongful foreclosure, (e) failure to properly maintain books and records, and (f) initiation of foreclosure actions without proper legal standing." *Id*. at ¶ 2 of Azeem000959.

    **RESPONSE**: Defendants incorporate their objections in response to Plaintiff's Additional Fact No. 44. Pursuant to the Court's standing order, the Court should disregard Plaintiff's Additional Fact No. 48.

    49.    The NYDFS identified "instances that indicated widespread noncompliance with the 2011 Agreement..." *Id*. at ¶ 8 of Azeem000960.

**RESPONSE**: Defendants incorporate their objections in response to Plaintiff's Additional Fact No. 44. Pursuant to the Court's standing order, the Court should disregard Plaintiff's Additional Fact No. 49.

50. Ocwen was required since December 2012 to retain an independent monitor to review (a) the adequacy of Ocwen's staffing levels, (b) the robustness of Ocwen's established policies and procedures, (c) the fairness of servicing fees and foreclosure charges, (d) the accuracy of borrower account information, (e) Ocwen's compliance with federal and state law, (f) borrower complaints and recordings of customer service, and (g) Ocwen's compliance with the [2011] Agreement. *Id*. at ¶ 9 of Azeem000961.

**RESPONSE**: Defendants incorporate their objections in response to Plaintiff's Additional Fact No. 44. Pursuant to the Court's standing order, the Court should disregard Plaintiff's Additional Fact No. 50.

51. "The Compliance Monitor began work in July 2013. In the course of the Compliance Monitor's review, it identified numerous and significant violations of the 2011 Agreement, as well as New York State laws and regulations" and "The Department and the Compliance Monitor also identified, among other things, (a) inadequate and ineffective information technology systems and personnel [...]" *Id*. at ¶¶ 10-11, 13 of Azeem000961-000962.

**RESPONSE**: Defendants incorporate their objections in response to Plaintiff's Additional Fact No. 44. Pursuant to the Court's standing order, the Court should disregard Plaintiff's Additional Fact No. 51.

52. "[T]he Compliance Monitor determined that Ocwen's information technology systems are a patchwork of legacy systems and systems inherited from acquired companies, many of which are incompatible. A frequent occurrence is that a fix to one system creates unintended

consequences in other systems. As a result, Ocwen regularly gives borrowers incorrect or outdated information, sends borrowers backdated letters, unreliably tracks data for investors, and maintains inaccurate records. There are insufficient controls in place - either manual or automated - to catch all of these errors and resolve them." *Id.* at ¶ 14 of Azeem000962.

**RESPONSE**: Defendants incorporate their objections in response to Plaintiff's Additional Fact No. 44. Pursuant to the Court's standing order, the Court should disregard Plaintiff's Additional Fact No. 52.

53. "Ocwen's core servicing functions rely on its inadequate systems. Specifically, Ocwen uses comment codes entered either manually or automatically to service its portfolio; each code initiates a process, such as sending a delinquency letter to a borrower, or referring a loan to foreclosure counsel. With Ocwen's rapid growth and acquisitions of other servicers, the number of Ocwen's comment codes has ballooned to more than 8,400 such codes. Often, due to insufficient integration following acquisitions of other servicers, there are duplicate codes that perform the same function. The result is an unnecessarily complex system of comment codes, including, for example, 50 different codes for the single function of assigning a struggling borrower a designated customer care representative." *Id.* at ¶ 17 of Azeem000963.

**RESPONSE**: Defendants incorporate their objections in response to Plaintiff's Additional Fact No. 44. Pursuant to the Court's standing order, the Court should disregard Plaintiff's Additional Fact No. 53.

54. "Despite these issues, Ocwen continues to rely on those systems to service its portfolio of distressed loans. Ocwen's reliance on technology has led it to employ fewer trained personnel than its competitors." *Id.* at ¶ 18 of Azeem000963.

**RESPONSE**: Defendants incorporate their objections in response to Plaintiff's Additional Fact No. 44. Pursuant to the Court's standing order, the Court should disregard Plaintiff's Additional Fact No. 54.

55. "Ocwen's inadequate infrastructure and ineffective personnel have resulted in Ocwen's failure to fulfill its legal obligations. Prior to the Department's and the Compliance Monitor's review, Ocwen did not take adequate steps to implement reforms that it was legally obligated to implement pursuant to the 2011 Agreement." *Id*. at ¶ 19 of Azeem000964.

**RESPONSE**: Defendants incorporate their objections in response to Plaintiff's Additional Fact No. 44. Pursuant to the Court's standing order, the Court should disregard Plaintiff's Additional Fact No. 55.

56. At Azeem000963-000964, paragraph 18, NYDFS found Ocwen's policy requires customer support staff to follow scripts closely, and Ocwen penalizes and has terminated customer support staff who fail to follow the scripts that appear on their computer screens".... "this policy has frustrated struggling borrowers who have complex issues that exceed the bounds of a script..." *Id*. at ¶ 18 of Azeem000963-000964.

**RESPONSE**: Defendants incorporate their objections in response to Plaintiff's Additional Fact No. 44. Pursuant to the Court's standing order, the Court should disregard Plaintiff's Additional Fact No. 56.

57. Additionally, more than 25 State regulators issued cease and desist orders against Ocwen relating to their ongoing mortgage servicing practices in April of 2017. These orders arose out of a Multi-state Mortgage Committee ("MMC") examination. *See* **Exhibit U** attached at p. 3. A relevant sampling of these orders from the States of Illinois, North Carolina and Massachusetts are attached as **Exhibits S, T and U** (Azeem000957-000978, 001072-001077,

001085-001096). These orders indicate Ocwen's ongoing mortgage servicing problems through at least April of 2017. *Id.*

**RESPONSE**: Defendants incorporate their objections in response to Plaintiff's Additional Fact No. 44. Pursuant to the Court's standing order, the Court should disregard Plaintiff's Additional Fact No. 57.

58. For example, one issue touched upon by all the State regulators was Ocwen's ongoing inability to reconcile escrow accounts for all borrowers on its system of record, RealServicing. Illinois found "Ocwen has been unable to accurately manage many of the consumer escrow accounts in its portfolio. Consumer escrow accounts are accounts that contain consumer funds held for payment of taxes and insurance. The MMC examination further found that Ocwen failed to make timely disbursements to pay for taxes and insurance from escrow accounts on numerous loans. The MMC examination also found that Ocwen routinely sent consumers inaccurate, confusing and/or misleading escrow statements." *See* **Exhibit S** attached at ¶ 10.

**RESPONSE**: Defendants incorporate their objections in response to Plaintiff's Additional Fact No. 44. Pursuant to the Court's standing order, the Court should disregard Plaintiff's Additional Fact No. 58.

59. The State of Massachusetts also found Ocwen routinely sent borrowers inaccurate escrow statements related to SAM modifications and routinely provided inaccurate loss mitigation information to borrowers. *See* **Exhibit U** attached at ¶¶ 17, 19. North Carolina's cease and desist order makes similar findings. *See* **Exhibit T** attached at ¶¶ 9, 13, 14.

**RESPONSE**: Defendants incorporate their objections in response to Plaintiff's Additional Fact No. 44. Pursuant to the Court's standing order, the Court should disregard Plaintiff's Additional Fact No. 59.

60.     Ocwen also displayed gross incompetence in the administration of the HAMP program, which is part of its loss mitigation program, resulting in homeowners being wrongfully cancelled out of HAMP modifications, such as what happened to Azeem here. *See* **Exhibit V** attached (Azeem001162).

**RESPONSE**: Defendants incorporate their objections in response to Plaintiff's Additional Fact No. 44.  Pursuant to the Court's standing order, the Court should disregard Plaintiff's Additional Fact No. 60.


Dated: June 1, 2018                                Respectfully submitted,

                                                   **CIT Bank, N.A. f/k/a OneWest Bank N.A.
                                                   (f/k/a OneWest Bank, FSB) and Ocwen
                                                   Loan Servicing, LLC**

                                            By:    /s/ Dawn N. Williams
                                                   One of Their Attorneys


Todd Gale (6229288)
tgale@dykema.com
DYKEMA GOSSETT PLLC
10 S. Wacker Drive, Suite 2300
Chicago, IL 60606
Phone:  312-627-2173
Fax:  866-457-8542

Dawn N. Williams (6308222)
dwilliams@dykema.com
DYKEMA GOSSETT PLLC
300 Ottawa Avenue, N.W., Suite 700
Grand Rapids, MI 49503-2306
Phone:  616-776-7518
Fax:  855-234-8873