THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHAHNAAZ A.R. KHAN f/k/a ) <br> SHAHNAAZ A. AZEEM, ) <br> ) <br>       Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ONEWEST BANK, F.S.B., and OCWEN ) <br> LOAN SERVICING, LLC, ) <br> ) <br>       Defendants. ) | Case No. 16-cv-08074 <br><br> Honorable Manish S. Shah <br><br> Magistrate Judge: Mary M. Rowland |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

To oppose summary judgment, Plaintiff attempts to create a question of fact based upon numbers alone. In response to Defendants' Motion for Summary Judgment, Plaintiff submits sixty additional statements of fact and disputes many of Defendants' statements of fact. But Plaintiff's proffer addresses only peripheral details, many of which have no relevance to this case (e.g., regulatory actions that do not pertain to this loan and past loan modification reviews). More importantly, Plaintiff does not create an issue of fact as to the ultimate issue in this lawsuit: whether Ocwen Loan Servicing, LLC ("Ocwen") was obligated to modify Plaintiff's loan on June 1, 2015 when Plaintiff failed to satisfy the requirements to accept the loan modification offer, namely submitting a signed copy of the agreement executed by both herself and her ex-husband, Ahmed Azeem ("Ahmed") by April 1, 2015.

Unable to rebut the fact that she failed to return the fully executed loan modification agreement by the April 1, 2015 deadline, Plaintiff switches course in her response and now argues that she was never required to accept the loan modification by April 1, 2015. As

discussed below, this argument is contrary to the express language of the loan modification offer and Plaintiff's understanding of the offer.

Accordingly, all collection efforts at issue were proper and there is no genuine issue of material fact supporting Plaintiff's claims. The Court should therefore enter summary judgment in Defendants'[1] favor.

## ARGUMENT

### I. NO GENUINE ISSUE OF MATERIAL FACT SUPPORTS PLAINTIFF'S BREACH OF CONTRACT CLAIM.

#### A. To Accept the Loan Modification Offer, Plaintiff Was Required To Submit A Fully Executed Copy Of The Loan Modification Agreement By April 1, 2015.

Plaintiff takes a new position in her response to Defendants' Motion for Summary Judgment: that she was not required to send in a fully executed copy of the Shared Appreciation Loan Modification ("SAM") Agreement by April 1, 2015 to accept the loan modification offer. Plaintiff contends that because the April 1, 2015 date is not mentioned in the SAM Agreement, she was not obligated to send in a fully executed SAM Agreement to modify her loan.

That argument is baseless and contrary to black letter contract law. "The basic rule of contract formation, sometimes called the 'mirror-image rule,' require[es] that the acceptance strictly comply with the terms set forth in the offer." *Hubble v. O'Connor*, 291 Ill. App. 3d 974, 980, 684 N.E.2d 816, 821 (1st Dist. 1997). *See also N.B. v. Norwood*, No. 11 C 6866, 2015 U.S. Dist. LEXIS 156709, at *12 (N.D. Ill. Nov. 19, 2015) ("ancient and cardinal rule of the law of contracts [is] the offeror is the master of his offer [and] may prescribe as many conditions or terms of the method of acceptance as he may wish. . . . " (edits in original)).

---

[1] Plaintiff does not challenge Defendants' argument that each and every claim against CIT Bank, N.A. f/k/a OneWest Bank N.A.'s ("CIT") fails because CIT was not involved in the loan modification review at issue. Plaintiff consents to the dismissal of CIT and, thus, impliedly admits that her claims against CIT lack merit. The Court should grant summary judgment in CIT's favor for this reason, in addition to the reasons discussed below.

2

Plaintiff's assertion that there could not be a deadline to accept the SAM loan modification offer because there was no deadline in the SAM Agreement itself skips over the terms of the offer and looks to the terms of the contract itself. But *before* the contract can be enforced, Plaintiff must first satisfy the requirements of the offer. *Hubble*, 291 Ill. App. 3d at 980; *Norwood*, 2015 U.S. Dist. LEXIS 156709, at *12.

Ocwen enclosed two letters with the SAM Agreement. The first letter notified Plaintiff that she was approved for a loan modification and referred Plaintiff to review the enclosed offer. Plaintiff's Response to Defendants' Statement of Undisputed Facts ("SOF"), ¶ 12. The next letter was the offer, which set forth the requirements to accept the loan modification offer. Defendants' SOF, ¶ 12. The bold type caption on the second letter stated: "Shared Appreciation Modification **Offer**[.]' *Id.* (emphasis added). The second letter also set forth in bold type: "How to Take Advantage of this Offer." *Id.* The offer instructed in bold and capital type: "STEP 1 **COMPLETE AND RETURN THE ENCLOSED AGREEMENT BY THE DUE DATE**" AND "STEP 2 MAKE YOUR INITIAL PAYMENT AND TRIAL PERIOD PAYMENT ON TIME[.]**"** *Id.* (emphasis in original). The offer further instructed that "[t]o accept this offer, **you must sign and return both copies** of the Shared Appreciation Modification Agreement and all Disclosures (collectively, "the Agreement") in the enclosed, pre-paid envelope to Ocwen Loan Servicing LLC . . . **by 4/1/2015**." *Id.* (emphasis in original).

The evidence, however, confirms that Ocwen did not receive the SAM Agreement signed by both Plaintiff and Ahmed by April 1, 2015. Defendants' SOF, ¶¶ 22, 25. Although Plaintiff claims to dispute this fact,[2] Plaintiff does not present any evidence that she submitted the SAM

---

[2] Plaintiff claims to dispute that Ocwen did not receive the fully executed SAM Agreement by April 1, 2015, and that Ocwen did not receive a fully executed SAM Agreement until August 5, 2015. *See, e.g.,* Plaintiff's Response to Defendants' SOF, ¶¶ 24, 34, 57, DE 75. Plaintiff's explanations for her dispute do not disprove the stated facts. First, Plaintiff's dispute to paragraph 22 of Defendants' SOF is

3

Agreement signed by both herself and Ahmed by April 1, 2015. Moreover, Plaintiff concedes that Ocwen notified her on multiple occasions after April 1, 2015 that it had not received the SAM Agreement signed by both herself and Ahmed. Defendants' SOF, ¶¶ 37, 41, 44. Plaintiff also concedes that Ahmed, himself, confirmed that he had not signed the SAM Agreement as of June 1, 2015. *Id.*, ¶ 38.[3] In sum, the evidence points to one conclusion: Plaintiff failed to submit the SAM Agreement signed by both herself and Ahmed by April 1, 2015.

Because it cannot be disputed that the offer for the SAM Agreement expressly provided that Plaintiff and Ahmed were required to sign and submit the SAM Agreement before April 1, 2015 to accept the loan modification offer; and, because it also cannot be disputed that Plaintiff did not submit the SAM Agreement signed by both herself and Ahmed by April 1, 2015, under the basic laws of contract formation, Plaintiff's trial payments alone were insufficient to accept

---

nonsensical. Ocwen's corporate representative testified that the first time Ocwen received the fully executed copy of the SAM Agreement from Plaintiff was August 5, 2015; thus, the testimony also confirms that as of April 1, 2015 and May 1, 2015, Plaintiff had not submitted the SAM Agreement executed by both herself and Ahmed. *See* Defendants' SOF, ¶ 25, DE 72 & 65. Next, Plaintiff's dispute to paragraph 34 of Defendants' SOF does not disprove the statement because statements from an Ocwen representative that Ocwen received the Agreement on May 11, 2015 is (i) not a statement that Ocwen received the SAM agreement signed by <u>both</u> Ahmed and Plaintiff and (ii) does not contradict Ocwen's statement that it received the SAM Agreement signed <u>only</u> by Plaintiff on May 8, 2015. *See id.*, ¶ 34. Plaintiff's dispute to paragraph 57 also is lacking. Again, statements that Ocwen received the SAM Agreement is not a statement that it received the SAM Agreement signed by <u>both</u> Plaintiff and Ahmed. Moreover, Plaintiff's claim that a comment that a quality check was done and no errors were found is proof that Ocwen received the SAM Agreement executed by both Plaintiff and Ahmed by June 15, 2015 is unsupported. First, the comment does not specify that it relates to the SAM Agreement. Plaintiff's Additional SOF, Exhibit G. Second, the later comments, including one dated June 29, 2015, confirm that Ocwen had not received the SAM Agreement executed by both Plaintiff and Ahmed. *See* Plaintiff's Additional SOF, Exhibit G, DE 77-7 at Ocwen001291 ("MOD AGREEMENT REJECT . . . Agent reviewed notes and determined accurate. . . . advised it was research letter about rejection of mod agreement. advised we needed signature from both borr or quit claim deed for borr who does not want to sign . . . .")

[3] Plaintiff notes that Ahmed stated "I sign, my wife sign, whatever, who did not?" Plaintiff's RESposne to Defendants SOF, ¶ 38, DE 75. That comment was a question in response to the Ocwen representative advising Ahmed that the SAM Agreement had not been fully executed. *Id.* When questioned further about the signatures, Ahmed admitted two times that he had not signed the SAM Agreement. *Id.* Ahmed stated, "A. I don't know, I know if she signed it but I did not. Q. You don't know. Have you spoke with your wife? A. I did not sign." *Id.*

4

the SAM loan modification offer. Accordingly, Ocwen was not obligated to modify Plaintiff's loan on June 1, 2015 and the Court should grant summary judgment in Defendants' favor on Plaintiff's breach of contract claim.

### B. There Is No Confusion About The Requirements To Accept The Loan Modification Offer.

To avoid the requirements of Ocwen's offer and the fatal deficiencies of her breach of contract claim, Plaintiff next argues that two cover letters to the SAM Agreement created confusion as to how to accept the offer. That argument likewise has no merit.

To begin, contrary to Plaintiff's assertion, the first cover letter does not purport to be the loan modification offer. The first letter is merely a <u>notice</u> that Plaintiff was approved for a loan modification and instructs Plaintiff to review the enclosed <u>offer</u>, which sets forth the requirement to submit the SAM Agreement by April 1, 2015. Plaintiff's Response to Defendants' SOF, ¶ 12, Complaint, Exhibit A, DE 1-1 at page 2 of 15 ("Even if you notify us of your intent to accept the offer within 14 days of this **notice**, you must remit your Total Monthly Payment on or before the first payment date defined in the **enclosed offer**." (emphasis added)).

Moreover, Plaintiff was not confused by the two letters or what requirements the offer entailed because Plaintiff had multiple communications with Ocwen in which she requested an extension of time to send in the SAM Agreement; and, Ocwen advised her that the deadlines could not be extended. Defendants' SOF, ¶ 11, Exhibit E, Exhibit 2 ("Please extend modification agreement submitting time til [sic] April 20, 2015[.] [M]y husband is out of . . .state 5 wks."); *id.*, ¶ 14, Exhibit E, Exhibit 3 ("I want to hold [o]r need (extension date) for return SAM modification agreement to Ocwen. . . . Plz [sic] reply when can I send Sam agreement back to Ocwen."); *id.*, ¶ 15, Exhibit E, Exhibit 4 ("In addition, our notes show you spoke with a customer service representative and requested additional time to return the SAM modification

5

agreement past the due date mentioned on the agreement . . . approvals cannot be adjusted nor do we have the ability to review customers for other types of modification plans.") Because Ocwen and Plaintiff understood that the April 1, 2015 deadline to submit the fully executed SAM Agreement was a condition of the loan modification offer, that joint understanding dispels any argument by Plaintiff that the Court should ignore well-settled contract law and waive the April 1, 2015 deadline. *See Bercoon, Weiner, Glick & Brook v. Manufacturers Hanover Trust Co.*, 818 F. Supp. 1152, 1155 (N.D. Ill. 1993) ("Illinois law holds that the intent of the parties controls the question of whether a contract exists.")

Plaintiff cites *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 560 (7th Cir. 2012) as purported authority that the Court can ignore the April 1, 2015 deadline provided in the loan modification offer because Plaintiff allegedly believed that she could bind Ocwen to a loan modification by making trial payments. Plaintiff misconstrues *Wigod. Wigod* did not hold that express terms of an offer can be ignored if the Plaintiff believed that those express requirements were unnecessary to form a contract. The central theory of the *Wigod* plaintiff's case was that the defendant breached the HAMP Trial Period Plan ("TPP") by refusing to provide a permanent modification at the end of the TPP. The defendant took the position that qualifying language in the TPP – which specified that there was no modification unless and until the plaintiff satisfied all conditions, received a fully executed copy of the modification agreement, and the modification effective date had passed – allowed the defendant to "simply refuse to send the Modification Agreement for any reason whatsoever . . . and there would still be no breach." *Id.*, at 563. The court rejected that argument, holding that such an interpretation would give the defendant "unbridled discretion to put a Modification Agreement in the mail." *Id*. The court, however, further held that "[t]he more natural interpretation is to read the provision as saying

6

that no permanent modification existed 'unless and until' Wigod (i) met all conditions, (ii) Wells Fargo executed the Modification Agreement, and (iii) the effective modification date passed. Before these conditions were met, the loan documents remained unmodified and in force, but . . . Wells Fargo still had an obligation to offer Wigod a permanent modification <u>once she satisfied all her obligations under the agreement</u>." (emphasis added).

Here, in contrast to *Wigod*, there was no refusal to offer a permanent modification. Ocwen offered Plaintiff a permanent modification, but Ocwen conditioned the acceptance of the offer on Plaintiff submitting the fully executed SAM Agreement by April 1, 2015. Plaintiff's argument that a contract to modify her loan formed irrespective of the April 1, 2015 deadline is not consistent with *Wigod* and ignores the court's distinction in *Wigod* that an outright refusal to offer a loan modification following a TPP may support a breach of contract; however, no modification agreement will exist unless and until all conditions are satisfied, including a delivery of a fully executed copy of the modification agreement. *Id*.

### C. Ocwen Had No Intent To Waive The April 1, 2015 Deadline.

Next, Plaintiff argues that because Ocwen was still willing to work with her to modify her loan after she failed to return the SAM Agreement by the April 1, 2015 deadline, Ocwen expressed an intent to modify the terms of the offer, waived the April 1, 2015 deadline, and, thus, was obligated to modify her loan on June 1, 2015. Under Plaintiff's theory, to avoid liability for her breach of contract claim, Ocwen should have refused to work with her and immediately foreclosed after she failed to submit the SAM Agreement signed by both her and Ahmed by April 1, 2015. This argument is also baseless.

Plaintiff relies heavily on conversations she had with Ocwen on March 25, 2015, March 30, 2015 and March 31, 2015, during which Ocwen informed Plaintiff that she could still receive

7

a modification if she returned the SAM Agreement late. Notably those conversions occurred <u>before</u> the April 1, 2015 deadline and did not contemplate Plaintiff returning the SAM Agreement signed by both herself and Ahmed <u>four months late</u>. Plaintiff's Additional SOF, Exhibit F, Exhibit X. Thus, these conversations do not express any intent by Ocwen to modify Plaintiff's loan four months after the deadline to submit the SAM Agreement expired. *See id.* Moreover, during those conversations, Ocwen did not advise Plaintiff that the express terms of the loan modification offer would be waived. *Id.* At most, the conversations only identified that Ocwen was committed to trying to help struggling homeowners and would work with the homeowners to modify their loan if they missed the deadline to submit a SAM Agreement within a limited period of time.

Nonetheless, Ocwen was clear that although it could work with Plaintiff to modify her loan after the April 1, 2015 deadline, the express terms of the offer could <u>not</u> be adjusted. *See* Defendants' SOF, ¶ 15, Plaintiff's Additional SOF, Exhibit W, p. 7 (On March 17, 2015 Ocwen advised: "You have a trial payment due April 1, 2015 and the signed agreement has to come in before that time."); *id.*, ¶ 23, Exhibit E, Exhibit 4 (April 27, 2015 letter advising Plaintiff that the terms of the loan modification offer could not be adjusted); *id.*, ¶¶ 31-32 (On May 7, 2015 Ocwen advised that it could not complete the modification until the SAM Agreement was received and that there was a <u>limited period of time</u> during which Ocwen could modify the loan after the SAM Agreement expired).

Plaintiff relies upon *Hammer v. Residential Credit Solutions, Inc.,* No. 13 C 6397, 2015 U.S. Dist. LEXIS 162636, at *26 (N.D. Ill. Dec. 3, 2015) as authority that comments from Ocwen's loan representatives that Plaintiff could receive a modification if she turned in the SAM Agreement late effectively modified the terms of the offer and waived the April 1, 2015

8

deadline. But *Hammer* is factually distinguishable from this case. First, the defendant in *Hammer* was not the party that made the loan modification offer and the court found that there was ample evidence that the prior servicer intended to modify the loan after the deadline to accept the modification offer. Here, unlike *Hammer,* there is evidence that the offeror, Ocwen, notified Plaintiff that it could not adjust the terms of the loan modification offer. *See* Defendants' SOF, ¶ 15, Plaintiff's Additional SOF, Exhibit W, p. 7 (On March 17, 2015 Ocwen advised: "You have a trial payment due April 1, 2015 and the signed agreement has to come in before that time."); *id.*, ¶ 23, Exhibit E, Exhibit 4 (April 27, 2015 letter advising Plaintiff that the terms of the loan modification offer could not be adjusted); *id.*, ¶¶ 31-32 (On May 7, 2015 Ocwen advised that it could not complete the modification until the SAM Agreement was received and that there was a limited period of time during which Ocwen could modify the loan after the SAM Agreement expired). Second, unlike the cover letter in *Hammer* (which said that if the plaintiff did not return the agreement by the deadline, the servicer would assume the plaintiff was not interested in the loan modification), the offer letter enclosed with the SAM Agreement in this case was a definite offer and expressly stated that to accept the offer, Plaintiff must return the SAM Agreement by April 1, 2015. Defendants' SOF, ¶ 12. Thus, *Hammer* is not dispositive in this case.

Accordingly, there is no genuine issue of material fact to support Plaintiff's claim that Ocwen was obligated to modify her loan on June 1, 2015. Summary judgment should be entered in Defendants' favor on Plaintiff's breach of contract claim.

## II. NO GENUINE ISSUE OF MATERIAL FACT SUPPORTS PLAINTIFF'S FDCPA CLAIM.

Plaintiff argues that her Fair Debt Collection Practices Act ("FDCPA") claim survives summary judgment because, based upon the terms of the SAM Agreement, her loan would be

9

automatically modified on June 1, 2015 if her trial payments were made on time. This argument rests upon Plaintiff's same failed argument above: that the April 1, 2015 deadline is not enforceable because the SAM Agreement does not include this deadline.

As noted above, this argument has no merit because the April 1, 2015 deadline was a condition to accept the loan modification offer and, because Plaintiff failed to accept the loan modification offer by April 1, 2015, there was no binding contract to modify her loan on June 1, 2015. Accordingly, the collection efforts that Plaintiff challenges in this action, including but not limited to default fees, foreclosure, and rejecting Plaintiff's loan modification for failure to submit the signed SAM Agreement by April 1, 2015, were proper and no violation of the FDCPA occurred.

Further, to the extent Plaintiff claims that default fees of $967.50[4] are improper and should have been resolved when the loan was modified in November 2015, that argument likewise fails. The SAM Agreement provides that the new principal balance under the loan modification "includes all amounts and arrearages that are past due . . . ." Defendants' SOF, ¶ 11, Complaint, DE 1-1 at page 16 of 35, ¶ A. While the SAM Agreement contemplates bundling the arrears and other outstanding amounts into the principal balance, the SAM Agreement does not provide that those arrears or other outstanding amounts are waived and non-collectible. *See id.*

---

[4] Plaintiff also references $7,352.67 in default fees as an alleged violation of the FDCPA. Plaintiff cites to mortgage statements attached to the Complaint as evidence of those fees. *See* Plaintiff's Response to Defendants' SOF, ¶ 11, DE 75. Those mortgage statements merely reflect prior account activity. *See* Defendant's SOF, ¶ 3, Complaint, DE 1-3 at pages 26 to 35, DE 72. *See id.* Per the terms of the SAM Agreement, those fees were added to the principal balance; they were not wiped clean, as Plaintiff suggests. *See id.,* Complaint, DE 1-3 at page 16 of 35. Thus, to the extent Plaintiff claims that the $7,352.67 in fees found in the mortgage statements violate the FDCA, Plaintiff has not identified anything improper about the fee history included in those mortgage statements or how that history violates the FDCPA.

Accordingly, the Court should grant summary judgment in Defendants' favor on Plaintiff's FDCPA claim because there is no genuine issue of material fact supporting Plaintiff's claim that Ocwen's collection efforts violated the FDCPA.

### III. NO GENUINE ISSUE OF MATERIAL FACT SUPPORTS PLAINTIFF'S ICFA CLAIM.

In defense of her Illinois Consumer Fraud Act ("ICFA") claim, Plaintiff regurgitates her argument that the April 1, 2015 deadline to return the SAM Agreement is unenforceable. Plaintiff argues that since Ocwen offered Plaintiff a SAM Agreement that did not include the April 1, 2015 deadline, it was unfair and deceptive of Ocwen to reject Plaintiff's modification after she failed to submit the fully executed SAM Agreement by April 1, 2015. Plaintiff further contends that her allegations of misrepresentations, even if innocent, satisfy the element of intent and are actionable under ICFA.

**A. The Facts Do Not Support Claims Of Unfair And Deceptive Conduct.**

First, Plaintiff's unfair and deceptive argument fails because, as noted above, it is well-settled that an offeror is the master of its offer and may place conditions on the acceptance of the offer. *See Norwood*, 2015 U.S. Dist. LEXIS 156709 at *12. The offer and contract are not one in the same. *See id.* Here, Plaintiff attempts to conflate the offer and contract into one to avoid the restrictions of the offer. But the evidence demonstrates that Ocwen made an express offer to Plaintiff for a loan modification, which conditioned acceptance of the offer on Plaintiff submitting the SAM Agreement signed by both herself and Ahmed by April 1, 2015. The evidence also demonstrates that (i) Plaintiff understood that she was required to return the SAM Agreement signed by both herself and Ahmed by April 1, 2015 and (ii) Ocwen notified Plaintiff that the terms of the loan modification could not be adjusted. *See* Defendants' SOF, ¶¶ 11, 14, 15.

11

Accordingly, it is evident that Ocwen explicitly told Plaintiff what was required to modify her loan. Thus, Ocwen's refusal to automatically modify Plaintiff's loan after Plaintiff failed to satisfy the requirements to accept the loan modification offer is not unfair or deceptive, and cannot support an ICFA claim.

### B. The Facts Do Not Satisfy The Element Of Intent.

Plaintiff's intent argument is equally unavailing. Plaintiff contends that intent is present because the evidence demonstrates a history of confirming the loan modification, instructing Plaintiff to make a payment, and then notifying Plaintiff of her default. Not so. The evidence confirms that Ocwen made it clear to Plaintiff that she had to submit the SAM Agreement signed by both herself and Ahmed by April 1, 2015 to accept the modification offer and that the terms of the modification could not be altered. *See* Defendants' SOF, ¶¶ 11, 14, 15. Although Ocwen advised Plaintiff that she could continue to make loan payments, Ocwen was equally clear that it could not modify her loan without the SAM Agreement executed by both borrowers. *Id.* Accordingly, the facts do not support the occurrence of any negligent or intentional misrepresentations that would support an ICFA claim.

### IV. NO GENUINE ISSUE OF MATERIAL FACT SUPPORTS PLAINTIFF'S RESPA CLAIM.

Plaintiff also fails to identify a genuine issue of material fact in support of her Real Estate Settlement Procedures Act ("RESPA") claim. Plaintiff avers that even if Ocwen was not obligated to modify her loan on June 1, 2015, any default fees lingering after Ocwen modified the loan on November 9, 2015 are improper. This argument is flawed for the same reason discussed in Section II, *supra*: the SAM Agreement did not erase Plaintiff's liability for default fees.

The default fees at issue, from March 17, 2015 until October 13, 2015, post-date the date of the March 11, 2015 loan modification offer. *See* Defendants' SOF, ¶ 11, Complaint, DE 1-1- at page 2 of 15, DE 1-4 at page 3 of 5. As a result, those fees were not calculated into the principal balance quoted in the SAM Agreement. *See id.* Because the SAM Agreement was not a commitment to wipe out default fees, and because Plaintiff failed to satisfy the requirements to modify her loan before those default fees were assessed, the fees are proper and Ocwen had no obligation to correct Plaintiff's account to waive those fees as Plaintiff contends.

Accordingly, there are no genuine issues of material fact supporting Plaintiff's RESPA claim and the Court should grant summary judgment in Defendants' favor.

## V. DAMAGES ARE LACKING.

Finally, Plaintiff claims that she has actionable damages consisting of attorney's fees, improper default charges, loss of time, and selling personal property, and a lot of stress and headaches. These arguments do not establish a genuine issue of material fact to save Plaintiff's claims.

First, Plaintiff's claim that she has incurred attorney's fees is too speculative and not supported by any documentation in the record.[5] Plaintiff's unsupported assertions of purported attorney's fees are insufficient to establish damages. *See Goran v. Glieberman,* 276 Ill. App. 3d 590, 595, 659 N.E.2d 56, 60 (1st Dist. 1995) (attorney's fees as damages are speculative when uncertainty exists as to the fact of damages).

---

[5] Defendants requested copies of Plaintiff's alleged legal bills. *See* Defendants' SOF, ¶ 80, Exhibit F, p. 101 at ll. 12-24 to p. 102 at ll. 1 to 6, DE 65-6. Plaintiff, however, never produced records of such fees and does not point to any evidence supporting her claim of those alleged fees. *See* Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, DE 76 at page 8 of 16.

Second, Plaintiff's claim of improper default fees fails because, as established above, modification of Plaintiff's loan did not waive default fees. *See* Section II, *supra.* Instead, those fees remain enforceable.

Third, Plaintiff's allegations of loss of time is too speculative. Plaintiff testified that she became employed within the last year or so, but Plaintiff has not provided any evidence to suggest that she has incurred any monetary loss in connection with the alleged loss of time. Defendants' SOF, ¶ 80, Exhibit F, p. 12 at ll. 18-24 to p. 13 at ll. 1 to 10. Accordingly, Plaintiff's loss of time allegations fail to create a question of material fact. *See Johnstone v. Bank of America, N.A.,* 173 F. Supp. 2d 809, 816 (N.D. Ill. 2001) (loss of time damages must be based upon pecuniary loss).

Fourth, Plaintiff's allegations of stress and headaches also fall short. Plaintiff cites *Alston v. King*, 231 F.3d 383, 388 (7th Cir. 2000) as purported authority establishing that a plaintiff's testimony alone may be sufficient to plead damages. However, the court in *Alston* clarified that "the more inherently degrading or humiliating the defendant's action is, the more reasonable it is to infer that a person would suffer humiliation or distress from that action . . . consequently, somewhat more conclusory evidence of emotional distress will be acceptable to support an award of emotional distress." *Id.* The court used slavery as a benchmark for measuring the extent of a degrading action. *Id.* Here, this case is a straightforward breach of contract claim and the facts do not rise to the level of degrading conduct sufficient to allow conclusory allegations of damages. Accordingly, Plaintiff's unsupported and conclusory allegations of stress and headaches do not satisfy the Seventh Circuit's strict standard for emotional damage. *See Sarver v. Experian Info. Solutions,* 390 F.3d 969, 971 (7th Cir. 2004) (The Seventh Circuit

"has maintained a *strict standard* for finding of emotional damage because they are so easy to manufacture." (emphasis added)).

Finally, Plaintiff's claim that she had to sell property as a result of the foreclosure also fails because Plaintiff's fear of foreclosure was the result of Plaintiff's own default and her failure to send in the SAM Agreement signed by both herself and Ahmed by the April 1, 2015 deadline, not any wrongful conduct of Ocwen.

## CONCLUSION

For the foregoing reasons, Ocwen Loan Servicing and CIT Bank, formerly known as OneWest Bank, F.S.B. respectfully request that the Court enter summary judgment in their favor on each of Plaintiff's claims.

Dated: June 1, 2018

Respectfully submitted,

**CIT Bank, N.A. f/k/a OneWest Bank N.A. (f/k/a OneWest Bank, FSB) and Ocwen Loan Servicing, LLC**

By: /s/ Dawn N. Williams
     One of Their Attorneys

Todd Gale (6229288)
tgale@dykema.com
DYKEMA GOSSETT PLLC
10 S. Wacker Drive, Suite 2300
Chicago, IL 60606
Phone: 312-627-2173
Fax: 866-457-8542

Dawn N. Williams (6308222)
dwilliams@dykema.com
DYKEMA GOSSETT PLLC
300 Ottawa Avenue, N.W., Suite 700
Grand Rapids, MI 49503-2306
Phone: 616-776-7518
Fax: 855-234-8873